IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

RODGER G. LAMB,

                Plaintiff,

     v.

CAROLYN COLVIN, Commissioner of
Social Security,

                Defendant.         Case No. 3:13-cv-00047-SLG

## DECISION AND ORDER

Rodger Lamb initiated this Social Security action in federal district court after exhausting administrative remedies. The matter has been fully briefed by the parties.[1] For the reasons set forth below, this matter will be reversed and remanded for the calculation and award of benefits.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Lamb is 45 years old.[2] He has a high school education, as well as some training in welding, metallurgy, and CAD programming.[3] From 1995 to 2005, he did construction work, and from 2006 to April 2008 he worked as an electronics engineer at

---

[1] Docket 22 (Lamb Br.); Docket 25 (Def.'s Br.); Docket 28 (Reply). Mr. Lamb also filed two notices of supplemental authority. Docket 29; Docket 30. Additionally, Mr. Lamb filed a notice of related cases, requesting that this case be assigned to the same judge as *Burt v. Colvin*, Case No. 4:13-cv-00031-HRH. *See* Docket 31. Defendant Commissioner of Social Security opposed this request at Docket 32. On January 24, 2014, Judge Russel Holland issued an order in *Burt v. Colvin* denying plaintiff's identical request in that case. Docket 21, Case No. 4:13-cv-00031. This Court agrees with the reasoning of that order; accordingly, Mr. Lamb's request to have this case and *Burt v. Colvin* assigned to the same judge is denied.

[2] *See* Administrative Record [hereinafter A.R.] 64 (Mr. Lamb's date of birth is July 2, 1968).

[3] A.R. 78, 255.

Envision Product Design.[4]   Since age 18, he has suffered from chronic abdominal pain, the precise cause of which has been difficult to diagnose.[5]

## I.   Mr. Lamb's Application for Social Security Disability Benefits.

On February 25, 2011, Mr. Lamb filed an application for Social Security disability insurance benefits with the State of Alaska Disability Determination Services office ("DDS").[6]  Mr. Lamb alleged a disability onset date of April 30, 2008, the last date that Mr. Lamb worked for Envision Product Design.[7]  He listed the following conditions as limiting his ability to work: Crohn's disease, eosinophilic gastroenteritis, diabetes, chronic pain, high cholesterol, high blood pressure, and depression.[8]  In 2011, Mr. Lamb was taking fifteen prescription medications—including opioids—for these conditions, most or all of which were prescribed by Dr. Verlyn Corbett at the Alaska Native Medical Center ("ANMC").[9]

---

[4] A.R. 78, 99, 243–44.

[5] *See, e.g.*, A.R. 170 (describing different diagnoses Mr. Lamb has received and tests with "inconclusive" results); A.R. 193 ("[Mr. Lamb] [h]as had a complicated history of chronic abdominal pain, and has been told in the past he has Crohn's and/or eosinophilic GI disease"); A.R. 200 (stating Mr. Lamb has a "25 year history of poorly defined chronic abdominal pain").

[6] A.R. 64–65.

[7] A.R. 73.

[8] A.R. 77.

[9] A.R. 93, 102–03.  A September 2011 form titled "Disability Report – Appeal" indicates Mr. Lamb was then taking fifteen prescription medications, all prescribed by Dr. Corbett.  *See* A.R. 93.  However, a February 2011 printout from ANMC titled "Patient Medication Profile" indicates that two of those fifteen medications were "non-ANMC."  *See* A.R. 103.  The February 2011 printout also indicates that in addition to the fifteen prescription medications listed on the September 2011 form, Mr. Lamb also had prescriptions for aspirin and glucose test strips.  *See* A.R. 102–03.

On July 28, 2011, DDS denied Mr. Lamb's application for disability insurance benefits.[10] On September 22, 2011, Mr. Lamb requested a hearing before an administrative law judge ("ALJ").[11]

## II. The ALJ's Denial of Mr. Lamb's Application for Benefits.

Mr. Lamb's hearing took place on February 15, 2012 in Anchorage, Alaska before ALJ Paul Hebda.[12]

### A. Medical Evidence in the Record.

The administrative record reflects the following:

Mr. Lamb has received most of his healthcare services at ANMC.[13] Dr. Corbett is his primary care physician.[14] Between 2008 and 2011, it appears Mr. Lamb consulted with Dr. Corbett in person numerous times, and it appears the purpose of many of those consultations was to evaluate Mr. Lamb's pain and/or medications.[15]

---

[10] A.R. 25–28, 176–77.

[11] A.R. 29–30. The Social Security Act provides each claimant with the right to a de novo hearing before an ALJ. *Heckler v. Campbell*, 461 U.S. 458, 462 n.6 (1983) (citing 42 U.S.C. §§ 405(b), 421(d)).

[12] A.R. 237.

[13] The administrative record includes Mr. Lamb's ANMC medical records for the period 2006–2012.

[14] *See* A.R. 80–81 (listing Dr. Corbett at ANMC as the physician who has medical records for Mr. Lamb).

[15] Included in the record are Dr. Corbett's notes from visits with Mr. Lamb. From those notes, it appears Mr. Lamb met with Dr. Corbett twelve times between April 2008 and June 2011. *See* A.R. 214–36. For seven of those visits, Dr. Corbett's notes indicate that Mr. Lamb's "Chief Complaint & Visit Plan" was related to pain and/or medications. *See* A.R. 214, 217, 218, 225, 228, 233, 235.

Additionally, it appears Mr. Lamb requested medication refills at least once in 2007 and 2009 and several times in 2010 and 2011.[16]

On February 18, 2010, Mr. Lamb visited ANMC and had a pain assessment done by Wendy Bradley, LPC.[17] Ms. Bradley's notes based on that visit state in part:

> [Mr. Lamb] has a twenty year history, starting at age 18 with stomach pain. It has never been clearly identified as to the cause of this pain. . . . [Mr. Lamb] has not worked for a year. He has done a variety of jobs to include construction, electronics fixing but has often had trouble with his managers, they just did not get along. He seems to have difficulties relating socially. . . . He has toyed with the idea of disability but we discussed that and felt like it was more important for him to get back to work. He is still able to do a lot and now that he is on regular narcotics should be able to function.[18]

After Mr. Lamb applied for social security benefits in February 2011, the DDS agent who evaluated Mr. Lamb's application ordered a consultative examination ("CE").[19] Dr. William Ragle performed the CE on July 18, 2011.[20] Based on his examination of Mr. Lamb, Dr. Ragle reported:

> [S]ince age 18 [Mr. Lamb] has had abdominal pain, bowel irregularities. He had an exploratory laparotomy in 1986, says they "found a brown coating on my bowels and biopsies were inconclusive." [Mr. Lamb] says he was treated with steroids at that time for "eosinophilic gastroenteritis." Since then he has continued to have bowel problems varying from constipation to diarrhea with no blood in the stool. Typically moves his bowels 1–2 times daily. Has chronic lower abdominal pain . . . . He describes having had multiple colonoscopies with "inconclusive findings, now they suspect Crohn's disease," last colon study was "10 years ago."

---

[16] *See* A.R. 130–43.

[17] A.R. 118.

[18] A.R. 118.

[19] A.R. 185.

[20] A.R. 169.

> EGD around the same time "[also] inconclusive."  He had a video capsule "5–6 years ago by Dr. Sweeney," this also being "inconclusive."  He indicates he takes multiple medications for his [symptoms] . . . .  He feels he cannot work because of the chronic pain.[21]

Dr. Ragle stated that "[i]t is very unusual for someone to have this degree of abdominal pain," and he found it "surprising that [Mr. Lamb] has not had more recent evaluation of his chronic [symptoms]."[22]  He also noted that Mr. Lamb was "being treated with medication usually used to treat inflammatory bowel disease," but he stated he was unable to supply a "definitive diagnosis" of Mr. Lamb's abdominal pain.[23]

Ten days after Dr. Ragle performed his CE, Dr. G. Morris, a physician employed by DDS, reviewed Mr. Lamb's medical records.  Based on that review, Dr. Morris "opined that [Mr. Lamb] may be being over-treated for something that hasn't even really been diagnosed."[24]  Dr. Morris also found "a lack of objective data to support [Mr. Lamb's] allegations of chronic pain."[25]  He recommended that Mr. Lamb's residual functional capacity be considered "at least medium."[26]  DDS denied Mr. Lamb's application for disability insurance benefits that same day.[27]

In December 2011, roughly five months after Mr. Lamb's application for social security disability benefits had been denied and two months before the administrative

---

[21] A.R. 170.

[22] A.R. 171.

[23] A.R. 171–72.

[24] A.R. 176.

[25] A.R. 186.

[26] A.R. 176, 186.

[27] A.R. 25–28, 176–77.

hearing, Mr. Lamb and his mother met with Dr. Corbett and expressed interest in "pursuing some advanced workup for [Mr. Lamb's] chronic abdominal pain."[28]  Dr. Corbett's notes state that Mr. Lamb has "a 25 year history of poorly defined chronic abdominal pain."[29]

On December 29, 2011, Mr. Lamb met with Dr. William Bowers, a gastroenterologist.  Dr. Bowers diagnosed Mr. Lamb with "eosinophilic gastroenteritis with symptoms of irritable bowel[,] diabetes, [and] hypertension."[30]  His notes characterize the severity of Mr. Lamb's abdominal pain as "moderate."[31]  He recommended Mr. Lamb have prednisone on hand to use during flares.[32]

On February 14, 2012, the day before Mr. Lamb's hearing, Dr. Corbett submitted a letter to the ALJ on behalf of Mr. Lamb.[33]  The letter states in relevant part:

> I am writing this letter on behalf of Mr. Rodger Lamb . . . .  Due to Mr. Lamb's eosinophilic gastroenteritis (abdominal pain, nausea, and food intolerances) and diabetes, Mr. Lamb has difficulty performing activities of daily living . . . .  Receiving social security benefits would benefit Mr. Lamb in his daily life.[34]

After the hearing, Dr. Corbett submitted a second, longer letter, which states in part:

---

[28] A.R. 200.

[29] A.R. 200.

[30] A.R. 198.

[31] A.R. 196.

[32] A.R. 198.

[33] A.R. 13.

[34] A.R. 211.

Mr. Lamb was diagnosed with eosinophilic gastroenteritis at the age of 18, this is a rare and unusual diagnosis. . . . His symptomology is best characterized by intermittent severe abdominal pain, bloating, and cramping. He has reported to me on many occasions that he has had great difficulty maintaining a work schedule or managing his activities of daily living based on the unpredictable and intermittent severity of his issues.

I would characterize his symptoms as being very similar to someone who has irritable bowel syndrome with much more frequency and severity. As can be seen in the medical record Mr. Lamb has required management of his chronic pain with opiates based on the severity.[35]

### B. Testimony at the Hearing.

Mr. Lamb's hearing before the ALJ lasted approximately 45 minutes.[36] Mr. Lamb, represented by an attorney, and an independent vocational expert ("VE") testified at the hearing.[37] Mr. Lamb testified that he has had problems with abdominal pain, "or with the eosinophilic gastroenteritis," since age 18.[38] He testified that his job at Envision Product Design was "terminated . . . because I could no longer show up for the amount of hours that they needed me to be there." When asked why he could not work regular hours, Mr. Lamb replied, "[b]ecause of my stomach pain and other problems—my work, in and out of the office from doctor's appointments and other stuff. They told me that I was no longer needed." He stated he missed three to four days of work per month.[39]

---

[35] A.R. 212–13.

[36] *See* A.R. 239, 259.

[37] A.R. 237.

[38] A.R. 244.

[39] A.R. 244.

Mr. Lamb testified that since 2008, he hasn't been able to seek other employment because "it takes most of what I can give during the week just to maintain myself and what I have to do around the household."[40]  He stated that he experiences abdominal pain of varying severity, ranging, on a scale of one to ten, from one to two on a good day to eight to nine on a bad day.[41]  When asked how many bad days he has on average each week, Mr. Lamb replied, "I'll have three or four bad days in a row and then go on for a week or two where I can maintain."[42]  He testified that the pain impacts his ability to concentrate and stay on task.[43]   Mr. Lamb also stated that three to four days per month, he is in the bathroom hourly due to bowel problems.[44]  Additionally, he experiences migraine headaches four to five times per month and "some nausea a little bit almost every day."[45]   He stated he takes medication for the pain, nausea, and migraines, as well as for high blood pressure, high cholesterol, diabetes, and depression.[46]

At the end of the hearing, the ALJ posed hypothetical questions to the VE.  The VE opined that given Mr. Lamb's educational background, he did not believe Mr. Lamb

---

[40] A.R. 245.

[41] A.R. 246–48.

[42] A.R. 247.

[43] A.R. 250.

[44] A.R. 245–46.

[45] A.R. 246, 248–49.

[46] A.R. 246

was qualified to for his past work as electronics engineer at Envision Product Design.[47]

However, the VE testified that a hypothetical person of Mr. Lamb's age, education, and work experience who can perform medium level work with some limitations would be able to perform Mr. Lamb's past work as a construction contractor, as well as other jobs that exist in the national and regional economies, such as campground attendant, baggage porter, and regular janitor, industrial cleaner.[48]   The VE also testified that employers generally give their employees three breaks per day and tolerate one to two unexcused absences per month.[49]   When asked by the ALJ whether "exceeding these customary limits on a regular basis [would] eliminate the jobs that you have cited as well as work in the competitive workplace," the VE responded, "Yes, it would."[50]

### C. The ALJ's Decision.

After considering all the evidence, the ALJ found that Mr. Lamb was not under a disability from April 30, 2008 through March 29, 2012, the date of the ALJ's decision.[51] On January 16, 2013, the Social Security Appeals Council denied Mr. Lamb's request for review.[52]

---

[47] A.R. 256.

[48] A.R. 256–57.

[49] A.R. 257.

[50] A.R. 257.

[51] A.R. 20.

[52] A.R. 1.

**III.    Mr. Lamb's Appeal.**

Mr. Lamb timely filed this action on March 6, 2013, seeking judicial review of the ALJ's findings pursuant to 42 U.S.C. § 405(g) of the Social Security Act.[53]  Mr. Lamb seeks reversal of the ALJ's decision or, in the alternative, remand for rehearing.[54] Defendant Commissioner of Social Security opposes the requested relief and asks the Court to enter a judgment affirming the ALJ's decision.[55]

## DISCUSSION

The Social Security Act provides for the payment of disability insurance benefits to individuals who have contributed to the social security program and who suffer from a disability.[56]  Disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[57]

The Social Security Commissioner has established a five-step process for determining disability.[58]  At Steps 1 through 4, the claimant bears the burden of proving his "entitlement to disability insurance benefits"; at Step 5, the burden shifts to the

---

[53] Docket 1 (Compl.); *see also* Docket 6 (Am. Compl.).

[54] Docket 6 at 3 ¶¶ 20–21 (Am. Compl.).

[55] Docket 25 at 2.

[56] 42 U.S.C. § 423(a).

[57] 42 U.S.C. § 423(d)(1)(A).

[58] 20 C.F.R. § 404.1520(a)(1).

Social Security Commissioner to show there is gainful activity the claimant can perform.[59]

At Step 1, the claimant must show he is not currently engaged in substantial gainful activity.[60] At Step 2, the claimant must demonstrate that his impairment is "severe," i.e., is an impairment that "significantly limits [his] physical or mental ability to do basic work activities" that has lasted or will last for at least twelve months.[61] At Step 3, if the claimant proves his impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then the ALJ must conclude the claimant is disabled.[62] If not, then the ALJ determines the claimant's residual functional capacity ("RFC"), or the most work the claimant can still do despite his limitations.[63] At Step 4, the ALJ uses the RFC to determine whether the claimant is capable of performing his past relevant work.[64] If the claimant proves he cannot perform his past relevant work, then at Step 5, the Social Security Commissioner must show—based on the claimant's RFC, age, education, and work experience—that the claimant is capable of performing other work that exists in

---

[59] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (quoting *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998)).

[60] 20 C.F.R. § 404.1520(a)(4)(i).

[61] 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 404.1509.

[62] 20 C.F.R. § 404.1520(a)(4)(iii).

[63] 20 C.F.R. § 404.1545(a)(1). The ALJ makes the RFC determination based on "all of the relevant medical and other evidence," including "descriptions and observations of [the claimant's] limitations" provided by the claimant and others. *Id.* § 404.1545(a)(3).

[64] 20 C.F.R. § 404.1520(a)(4)(iv).

the national economy.[65]  If the claimant can make an adjustment to other work, he is not disabled.  If he cannot make such an adjustment, then he is considered disabled.[66]

In this case, at Step 1 the ALJ found Mr. Lamb has not engaged in substantial gainful activity since April 30, 2008.[67]  At Step 2, the ALJ found that Mr. Lamb has the following severe impairments: abdominal pain, diabetes, migraine headaches, hypertension, and obesity.[68]  At Step 3, the ALJ found that Mr. Lamb does not have an impairment or combination of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[69]

The ALJ then determined that Mr. Lamb has the RFC to perform medium work with the following limitations: "the claimant is limited to occasional climbing of ladders, ropes, and scaffolds [and] should avoid concentrated exposure to extreme cold and moderate exposure to moving and hazardous machinery and unprotected heights."[70]  At Step 4, the ALJ relied on the testimony of the VE to determine that Mr. Lamb is unable to perform his past relevant work.[71]  But at Step 5, the ALJ found that "[c]onsidering [Mr.

---

[65] 20 C.F.R. § 404.1520(a)(4)(v).

[66] *Id.*

[67] A.R. 11.

[68] A.R. 11.  Technically, "abdominal pain" is a symptom, not a medically determinable impairment.  *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529.  However, there is sufficient evidence in the record from which the ALJ could conclude that Mr. Lamb has a medically determinable impairment that causes abdominal pain.  *See, e.g.*, A.R. 198 (Dr. Bower's notes).

[69] A.R. 14.

[70] A.R. 14–15.  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

[71] A.R. 19.

Lamb's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform."[72] Specifically, based on the testimony of the VE, the ALJ concluded that Mr. Lamb could perform the jobs of campground attendant, baggage porter, and janitor.[73] Accordingly, the ALJ ruled that Mr. Lamb was not disabled under the Social Security Act.[74]

## I. Standard of Review.

The ALJ's denial of benefits to Mr. Lamb should be set aside "only if it is not supported by substantial evidence or is based on legal error."[75] An ALJ's determination is based on legal error if the ALJ failed to apply the proper legal standard.[76] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion."[77] A reviewing court "must consider the entire record as a whole,"[78] and "[i]f the record considered as a whole can reasonably support either affirming or reversing the [ALJ's] decision, [the court] must affirm."[79]

---

[72] A.R. 19.

[73] A.R. 20.

[74] A.R. 20.

[75] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).

[76] *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("We will affirm . . . if the ALJ applied the proper legal standard . . . .").

[77] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[78] *Id.* (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

[79] *Hiler v. Astrue*, 687 F.3d 1208, 1211 (9th Cir. 2012) (quoting *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002)).

## II. Analysis.

Mr. Lamb asserts that the ALJ's decision should be reversed because (1) the ALJ "committed error of law by requiring [Mr.] Lamb to prove inability to do 'any and all work'"; (2) the ALJ's "adverse credibility assessment of [Mr.] Lamb is not supported by substantial evidence" and is based on legal error; and (3) the ALJ failed to consider Mr. Lamb's job termination letter from Envision Product Design.[80] The first two of these arguments are discussed below, but because the Court agrees with Mr. Lamb that the ALJ's credibility determination is not supported by substantial evidence, the Court does not reach Mr. Lamb's third argument.

### A. *The ALJ applied the correct legal standard for determining disability.*

Mr. Lamb asserts that the ALJ "committed error of law by requiring [Mr.] Lamb to prove inability to do 'any and all work' whereas the law and regulations require only proof of 'inability' to engage in 'substantial gainful activity.'"[81] He then quotes several sentences in the ALJ's decision, such as "this condition simply does not rise to the level of a disabling impairment prohibiting the claimant from performing <u>any and all work</u>,"[82] and "the undersigned finds the claimant's allegations of disabling physical impairments resulting in a <u>complete inability to engage in basic work activities</u> are not fully credible."[83]

---

[80] Docket 22 at 12–36. Additionally, somewhat related to the second claim, Mr. Lamb asserts that the ALJ's RFC assessment is illogical. Docket 22 at 32–33. This assertion is discussed briefly at note 139, *infra*.

[81] Docket 22 at 12.

[82] Docket 22 at 12 (quoting A.R. 16) (emphasis in original).

[83] Docket 22 at 13 (quoting A.R. 18) (emphasis in original).

All of the sentences quoted by Mr. Lamb are from the portion of the ALJ's decision in which he explains his RFC determination.[84]  In that section, the ALJ states that in Mr. Lamb's initial disability report and at the hearing, Mr. Lamb "alleged an inability to work" due to his impairments.[85]  The ALJ then explains why he determined that Mr. Lamb's "allegations of disabling physical impairments resulting in a complete inability to engage in basic work activities [were] not fully credible."[86]

Mr. Lamb asserts that "the record does not support the untrue assertion that [Mr.] Lamb alleged 'complete inability to engage in basic work activities.'"[87]  However, at the hearing, Mr. Lamb testified that because "it takes most of what I can give during the week just to maintain myself and what I have to do around the household," he had been unable "to do anything for seeking other employment" since being terminated from Envision Product Design in 2008.[88]  It was reasonable for the ALJ to understand Mr. Lamb as testifying that because of his impairments, he had been unable to do any job since 2008.  The Court therefore agrees with the Defendant that the ALJ's use of the phrases "any and all work" and "inability to engage in basic work activities" in the RFC

---

[84] *See* Docket 22 at 12–14; A.R. 14–19.

[85] A.R. 15.

[86] A.R. 18.

[87] Docket 22 at 16.

[88] A.R. 245; *see also* A.R. 170 (Dr. Ragle's CE report) ("[Mr. Lamb] feels he cannot work because of the chronic pain.").

discussion appears intended simply to explain why he did not fully credit Mr. Lamb's testimony.[89]

Read as a whole, the ALJ's decision reflects that he understood that under the Social Security Act, "[d]isability is defined as the inability to engage in any substantial gainful activity."[90]  It also reflects that the ALJ applied the correct five-step process for determining disability.[91]

### B. The ALJ's credibility assessment of Mr. Lamb is not supported by substantial evidence.

The ALJ found Mr. Lamb's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not credible" to the extent they were inconsistent with the RFC determination of medium.[92]  Mr. Lamb asserts this adverse credibility determination was erroneous.[93]

---

[89] *See* Docket 25 at 7 (asserting the ALJ used the phrases to "reflect the factual record").  The Court disagrees with Mr. Lamb's assertion that the ALJ's use of the phrases "any and all work" and "inability to engage in basic work activities" "amounts to . . . an accusation of malingering." *See* Docket 22 at 17.  The ALJ's decision does not contain a finding of malingering.

[90] A.R. 9.

[91] *See* A.R. 9–20; *see also* Docket 25 at 4 ("In the present case, the ALJ properly applied the five-step sequential evaluation process.").  The Court also observes that in the regulation explicating the five-step process, the term "substantial gainful activity" is used at Step 1, but the term "other work" is used at Step 5.  *Compare* 20 C.F.R. § 404.1520(a)(4)(i) ("If you are doing substantial gainful activity, we will find that you are not disabled."), *with* 20 C.F.R. § 404.1520(a)(4)(v) ("If you can make an adjustment to other work, we will find that you are not disabled.").

[92] A.R. 16.

[93] Docket 22 at 33.

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, an ALJ engages in a two-step analysis."[94]  First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[95] If there is such evidence, then the ALJ "may not discredit [the] claimant's testimony of pain and deny disability solely because the degree of pain alleged by the claimant is not supported by objective medical evidence."[96]  Instead, at the second step of the analysis, unless there is affirmative evidence that the claimant is malingering, the ALJ must give "specific, clear and convincing reasons" before discrediting the claimant's testimony.[97]

"In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'"[98]  For example, the ALJ may consider the claimant's reputation for truthfulness, prior inconsistent statements, inconsistencies between the claimant's testimony and his conduct, an unexplained or inadequately explained failure to seek treatment, the claimant's daily activities, the claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms.[99]

---

[94] *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

[95] *Id.* (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

[96] *Bunnell v. Sullivan*, 947 F.2d 341, 346–47 (9th Cir. 1991) (en banc).

[97] *Molina*, 674 F.3d at 1112 (quoting *Vasquez*, 572 F.3d at 591).

[98] *Id.* (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)).

[99] *See Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002).

Here, the ALJ found under step one of the credibility analysis that Mr. Lamb's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms."[100] Then, at the second step, the ALJ found that Mr. Lamb's testimony concerning the severity and limiting effects of his symptoms was not fully credible.[101]

The ALJ provided several clear reasons for this adverse credibility determination: (1) Mr. Lamb's activities of daily living are inconsistent with his allegations of disabling pain; (2) Mr. Lamb "has not required frequent physician visits" for his abdominal pain and other physical impairments; (3) Mr. Lamb's allegations of disabling pain are inconsistent with some of his medical records, namely, Ms. Bradley's pain assessment, Dr. Ragle's CE report, Dr. Morris's opinion, and Dr. Bowers's treatment notes from Mr. Lamb's December 2011 visit; and (4) Mr. Lamb's receipt of unemployment benefits in 2009 and 2010 is inconsistent with his allegations of disabling pain.[102]

> i. *The ALJ erred in relying on Mr. Lamb's receipt of unemployment benefits in making his adverse credibility determination.*

Mr. Lamb asserts it was legal error for the ALJ to rely on Mr. Lamb's receipt of unemployment benefits in making his adverse credibility determination.[103] The Ninth Circuit addressed this issue in *Carmickle v. Commissioner, Social Security*

---

[100] A.R. 16.

[101] A.R. 16. The ALJ did not indicate there was any affirmative evidence indicating Mr. Lamb was malingering.

[102] A.R. 15–19.

[103] Docket 22 at 19.

*Administration.*[104]  In that case, the ALJ "gave less weight to [the claimant's] testimony because he received unemployment benefits during the time he alleges disability."[105]  The Ninth Circuit explained that "while receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime, the record here does not establish whether [the claimant] held himself out as available for full-time or part-time work.  Only the former is inconsistent with his disability allegations."[106]

In this case, the ALJ found that "the fact that the claimant applied for and received unemployment benefits, and in doing so certified that he was physically and mentally able to work, certainly detracts from his credibility and allegations of disabling pain and other limitations."[107]  However, the only documentation in the record regarding unemployment benefits is a single-page printout that reflects only that Mr. Lamb received unemployment benefits for the fourth quarter of 2009 and the first two quarters of 2010.[108]  The record contains no certification by Mr. Lamb that he was physically and mentally able to work.[109]  Accordingly, as in *Carmickle*, Mr. Lamb is correct that the ALJ

---

[104] 533 F.3d 1155 (9th Cir. 2008).

[105] *Id.* at 1161.

[106] *Id.* at 1161–62 (citations omitted).

[107] A.R. 18.

[108] *See* A.R. 66.

[109] The Defendant asserts that in Alaska, a person is only eligible for unemployment benefits if the person "is able to work and available for suitable work."  Docket 25 at 14 (quoting Alaska Stat. § 23.20.378(a)).  And yet, under Alaska law, there is an exception to this requirement that allows a person who is ill or disabled to receive unemployment benefits for up to six weeks if certain other conditions are met.  *See* Alaska Stat. § 23.20.378(a), (b).

erred in relying on Mr. Lamb's receipt of unemployment benefits as a basis for his adverse credibility finding.

    *ii. The ALJ's reliance on Mr. Lamb's receipt of unemployment benefits was not harmless error.*

Because the Court has concluded that one of the ALJ's reasons supporting his adverse credibility finding is invalid, the Court must determine whether the ALJ's reliance on that reason was harmless error.[110] An error is harmless "[s]o long as there remains 'substantial evidence supporting the ALJ's conclusions . . . on credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion.'"[111]

In his merits brief, Mr. Lamb does not take issue with any of the ALJ's other reasons for discounting Mr. Lamb's credibility—namely, Mr. Lamb's daily activities, Mr. Lamb's infrequent doctor visits, and inconsistencies between Mr. Lamb's medical records and his testimony. However, because this Court must evaluate the ALJ's decision in light of "the entire record as a whole,"[112] the Court will examine these reasons in turn.

    *(a) The ALJ erred in relying on Mr. Lamb's activities of daily living in making his adverse credibility determination.*

The Ninth Circuit has held that disability claimants "need not 'vegetate in a dark room' in order to be eligible for benefits,"[113] and they "should not be penalized for

---

[110] *See Carmickle*, 533 F.3d at 1162.

[111] *Id.* (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 539 F.3d 1190, 1197 (9th Cir. 2004)).

[112] *See Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

[113] *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987)) (internal quotation marks omitted).

attempting to lead normal lives in the face of their limitations."[114]   But daily activities may be grounds for an adverse credibility finding if a claimant is "able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."[115]

Here, the record does not indicate that Mr. Lamb is able to consistently spend a substantial part of his day performing physical functions that are transferable to a work setting.    Rather, the ALJ mischaracterized Mr. Lamb's testimony concerning his activities of daily living in reaching the conclusion that those activities belie Mr. Lamb's allegations of severe and limiting pain.  For example, the ALJ's decision states that Mr. Lamb testified that he "has no problems with personal care."[116]   But Mr. Lamb in fact testified that bathing and personal hygiene "seem to be lacking when I'm not feeling well."[117]   The ALJ's decision also states that Mr. Lamb testified that he "is able to do his own cooking, cleaning, and shopping."[118]   But Mr. Lamb testified that he needs help with cooking, cleaning, and chores on "bad days."[119]   The ALJ's decision states that Mr.

---

[114] *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

[115] *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." (citations omitted)).

[116] A.R. 15–16.

[117] A.R. 252.  In response to questions from the ALJ, Mr. Lamb did testify that he is able physically to bathe and dress himself, but he also stated, "I have problems with mornings, they seem to be worse on me."  A.R. 253.

[118] A.R. 16.

[119] A.R. 251.

Lamb testified that he "helps his parents with snow removal in winter."[120]   But Mr. Lamb's testimony was more nuanced; he stated that he might help his parents with snow removal "a little bit on a good day."[121]   The ALJ's decision also states that Mr. Lamb testified that he "is able to drive and goes out with friends several times a week."[122]   Mr. Lamb did testify that he is able to drive and that he might go out with friends once or twice in a good week, but he also testified that "if it's bad I may not see anybody but my parents for over a week."[123]   When Mr. Lamb's testimony concerning his activities of daily living is considered, it is not inconsistent with Mr. Lamb's allegations of pain.  Only by mischaracterizing Mr. Lamb's statements was the ALJ able to conclude otherwise.[124]   The Court concludes, therefore, that the ALJ erred in relying on Mr. Lamb's activities of daily living in making his adverse credibility determination.

---

[120] A.R. 16.

[121] A.R. 252.

[122] A.R. 16.

[123] A.R. 252–53.  The ALJ similarly mischaracterized Mr. Lamb's statements in his application for social security benefits.  *Compare* A.R. 83–89 (Mr. Lamb's statements regarding his daily activities and abilities in his application materials), *with* A.R. 15, 17 (ALJ's characterization of those statements).  The ALJ also noted that Mr. Lamb's hobbies include watching television, "indicating a good ability to maintain attention and concentrate."  A.R. 15.  However, the Ninth Circuit has held that watching television is an activity that is "so undemanding that [it] cannot be said to bear a meaningful relationship to the activities of the workplace."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

[124] *Cf. Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.  Our examination of the record shows that the ALJ has erred in characterizing statements and documents contained therein to reach the conclusion that Claimant exaggerated her symptoms. . . .  In essence, the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports.  His paraphrasing of record material is not entirely accurate regarding the content or tone of the record.").

*(b) The ALJ's remaining reasons for discounting Mr. Lamb's credibility do not amount to substantial evidence supporting the adverse credibility determination.*

The ALJ also based his adverse credibility determination in part on the fact that Mr. Lamb "has sought very little treatment for his various physical impairments."[125] However, the record is somewhat equivocal on this point. On the one hand, Dr. Ragle's CE report indicates that Mr. Lamb has sought treatment for his conditions, particularly his abdominal pain, only sporadically.[126] On the other hand, Mr. Lamb is taking numerous prescription drugs for his impairments, including narcotics, and his ANMC records indicate that he visited or phoned Dr. Corbett numerous times between 2008 and 2011 to discuss his pain and/or medications.[127] Accordingly, the Court does not find the frequency with which Mr. Lamb has sought treatment to be a particularly convincing reason for discounting his credibility.

The ALJ also found that Mr. Lamb's allegations of disabling pain are inconsistent with his treatment records, namely, Ms. Bradley's pain assessment, Dr. Ragle's CE report, Dr. Morris's opinion, and Dr. Bowers's treatment notes from Mr. Lamb's December 2011 visit.[128] The ALJ assigned significant weight to the opinions of Ms. Bradley, Dr. Ragle, Dr. Morris, and Dr. Bowers.[129] However, the ALJ did not assign significant weight to Dr. Corbett's letters because he determined that those opinions

---

[125] A.R. 17.

[126] *See supra* text accompanying note 21–23.

[127] *See supra* notes 9, 14–16 and accompanying text.

[128] A.R. 16, 18–19.

[129] A.R. 18.

"are based almost entirely on the claimant's subjective complaints and are unsupported by the medical record as a whole."[130]

In his reply brief, Mr. Lamb asserts that the ALJ "commit[ed] error of law . . . with respect to the impact accorded to Dr. Morris."[131] Mr. Lamb asserts that the ALJ erred in relying on Dr. Morris's opinion because the ALJ "did not validly discount the opinion of Dr. Verlyn Corbett."[132]

"When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict. Greater weight must be given to the opinion of treating physicians, and in the case of a conflict 'the ALJ must give specific, legitimate reasons for disregarding the opinion of the treating physician.'"[133]

Here, Dr. Corbett's letters are not consistent with Ms. Bradley's pain assessment, which states that Mr. Lamb has had trouble getting along with managers at work and "is still able to do a lot,"[134] and Dr. Bower's treatment notes, which characterize Mr. Lamb's pain as "moderate."[135] Although Dr. Morris did not physically examine Mr. Lamb, his opinion is consistent with Ms. Bradley's and Dr. Bower's opinions, and it does not

---

[130] A.R. 18.

[131] Docket 28 at 1.

[132] Docket 28 at 2.

[133] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)); *see also* 20 C.F.R. § 404.1527(d) (describing how medical opinions are weighed).

[134] A.R. 118.

[135] A.R. 196.

appear that it was given any more weight than those opinions.[136]  Accordingly, the Court

finds that the ALJ did not err in discounting Dr. Corbett's letters based on conflicting

medical opinions, particularly in light of the fact that it is unclear to what extent Dr.

Corbett's opinion in the letters is based on clinical findings as opposed to Mr. Lamb's

subjective complaints.[137]  And, more broadly, the Court finds that Mr. Lamb's treatment

records, particularly the opinion of Ms. Bradley, provide a valid reason for discounting

Mr. Lamb's credibility.

Based on the foregoing, the Court concludes that the ALJ provided only one

valid reason for discounting Mr. Lamb's credibility, namely, that some of Mr. Lamb's

treatment records are inconsistent with his allegations of disabling pain.  However, after

reviewing the record, the Court finds that these treatment records alone do not amount

to substantial evidence sufficient to support the ALJ's adverse credibility determination,

particularly in light of the fact that Mr. Lamb sought treatment for pain from Dr. Corbett

numerous times prior to and after filing for disability.[138]

---

[136] *Cf. Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with . . . other evidence in the record.").  Mr. Lamb asserts the ALJ accorded Dr. Morris's opinion "special significance" and that Dr. Morris's opinion "became the linchpin of the [RFC] analysis."  Docket 28 at 4.  The Court disagrees.  Although the ALJ assigned Dr. Morris's opinion "significant weight," the ALJ also assigned Dr. Ragle's, Dr. Bowers's, and Ms. Bradley's opinions significant weight, and the ALJ's discussion of Dr. Morris's opinion amounts to only a few sentences in the four-page RFC analysis.  *See* A.R.15–19.

[137] *Cf. Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

[138] *See supra* notes 9, 14–16, 28–29 and accompanying text.

### C. The Court will remand for calculation of benefits.

Because the ALJ's decision to discount Mr. Lamb's testimony concerning the severity and limiting effects of his symptoms is not supported by substantial evidence, the ALJ's RFC assessment is not supported by substantial evidence.[139] And because the ALJ's RFC assessment is not supported by substantial evidence, his Step 5 determination is also not supported by substantial evidence, since it was based on the RFC assessment.[140] The Court must therefore determine whether to remand for calculation of benefits, as Mr. Lamb requests,[141] or whether to remand for further proceedings.

In this situation, the Ninth Circuit directs courts to apply the "credit-as-true" doctrine:

> [A court should] not remand for further proceedings where, taking the claimant's testimony as true, the ALJ would clearly be required to award benefits:

---

[139] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) ("Because the ALJ did not provide clear and convincing reasons for excluding [claimant's] pain and symptoms from his assessment of [claimant's] RFC, substantial evidence does not support the assessment."). Mr. Lamb also asserts that the ALJ's RFC determination is illogical. Specifically, he asserts that the ALJ's finding that Mr. Lamb cannot perform his past work at Envision Product Design—a job at the light exertional level—demonstrates that the RFC finding of medium is erroneous. Docket 22 at 32. The ALJ's decision states: "[T]he vocational expert testified that a person with [Mr. Lamb's] limitations would be unable to perform his past relevant work as an electrical engineer, as this occupation requires the performance of work-related activities precluded by [Mr. Lamb's] residual functional capacity." A.R. 19. However, this is not an accurate characterization of the VE's testimony. The VE testified that given Mr. Lamb's educational background, he did not believe Mr. Lamb was qualified to perform his past work at Envision Product Design. A.R. 256. Accordingly, although not supported by substantial evidence, the ALJ's RFC determination is not, as Mr. Lamb suggests in his briefing, "utterly nonsensical."

[140] *See Lingenfelter*, 504 F.3d at 1041 ("Nor does substantial evidence support the ALJ's step-five determination, since it was based on this erroneous RFC assessment.").

[141] *See* Docket 22 at 34–36.

"In cases where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's . . . testimony were credited, [a court should] not remand solely to allow the ALJ to make specific findings regarding that testimony. Rather, [the court should] . . . take that testimony to be established as true."[142]

Here, Mr. Lamb testified that when he worked at Envision Product Design, he missed three to four days of work per month.[143]  He further testified that a couple of times per month, he has a string of three to four bad days in a row where he would rate his pain level as eight or nine.[144]  He also testified that on some bad days, he doesn't "really get out of bed that much" and needs help with household chores.[145]  And he testified that three to four days per month, he is in the bathroom hourly due to bowel problems.[146]  If this testimony is credited, then it is clear from the record that the ALJ

---

[142] *Lingenfelter*, 504 F.3d at 1041 (quoting *Varney v. Sec'y of Health & Human Servs. (Varney II)*, 859 F.2d 1396, 1401 (9th Cir. 1988)).  Since the credit-as-true doctrine was articulated in *Varney II*, "a split of authority has developed over whether the rule is mandatory or discretionary in [the Ninth] Circuit."  *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2008).  In *Connett v. Barnhart*, the ALJ did not provide reasons for rejecting the claimant's testimony that she suffers from migraines and colitis that "debilitate her for days at a time."  *See* 340 F.3d 871, 874 (9th Cir. 2003).  The Ninth Circuit panel in that case held that "we have some flexibility in applying the 'crediting as true' theory," and it remanded for the ALJ to "reconsider his decision with regard to [claimant's] migraines and colitis, including her credibility on these complaints."  *Id.* at 876.  It appears the Ninth Circuit has yet to resolve the conflict between *Varney II* and *Connett* for cases such as this one in which there are no "outstanding issues that must be resolved before a proper disability determination can be made."  *See Vasquez*, 572 F.3d at 593, 599.  However, recent memorandum dispositions issued by the Ninth Circuit have applied the credit-as-true doctrine when there are no outstanding issues that must be resolved. *See, e.g., Om v. Colvin*, No. 11-17618, 2013 WL 6085638, at *2 (9th Cir. Nov. 20, 2013); *Deleo v. Astrue*, 374 F. App'x 743, 744 (9th Cir. 2010); *Woody v. Astrue*, 357 F. App'x 765, 767 (9th Cir. 2009).  Consistent with these dispositions, this Court will apply the credit-as-true doctrine in this case.

[143] A.R. 244.

[144] A.R. 247.

[145] A.R. 251.

[146] A.R. 245–46.

would be required to award Mr. Lamb benefits. The VE testified at the hearing that employers generally give their employees three breaks per day and tolerate one to two unexcused absences per month, and there is not "work in the competitive workplace" available to a person who regularly exceeds these customary limits.[147] Accordingly, the Court will remand this matter for the calculation and award of benefits.[148]

### CONCLUSION

For the reasons discussed above, this matter is REVERSED and REMANDED to the Commissioner of Social Security for the calculation and award of benefits.[149]

DATED this 29th day of January, 2014, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
United States District Judge

---

[147] A.R. 257.

[148] Because the Court has determined that Mr. Lamb is entitled to benefits, it need not reach the issue of whether Mr. Lamb's job termination letter from Envision Product Design should be treated as lay witness testimony that the ALJ was required to consider. *See* Docket 22 at 24–32.

[149] If the claim was remanded for rehearing, Mr. Lamb requested an ALJ other than ALJ Hebda. Because the Court is remanding for calculation and award of benefits, this request is denied as moot.